ORDERED.

**Dated:  October 19, 2022**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                           Case No. 8:21-bk-00079-MGW
                                                                 Chapter 7
Judith Lynn Digregorio,

     Debtor.
_____/

## MEMORANDUM OPINION ON
## BIFURCATED FEE AGREEMENT

Under the Van Horn Law Group's bifurcated fee agreement, a debtor signs one agreement for prepetition services and, after the firm has filed a bankruptcy case for the debtor, the debtor signs a second agreement for postpetition services. Under the prepetition agreement, the debtor asks Van Horn to pay the bankruptcy filing fee on his or her behalf, for which "the firm will seek reimbursement from me."

The United States Trustee objects to Van Horn's bifurcated fee agreement. As set forth below, because Federal Rule of Bankruptcy Procedure 1006 mandates that a bankruptcy petition be accompanied by a filing fee, this Court cannot approve a fee agreement that specifically contemplates that Van Horn will disregard the rule.

## I.    BACKGROUND

The Van Horn Law Group entered into a bifurcated fee agreement with the Debtor (the "Fee Agreement").[1] Under the Fee Agreement, Van Horn charged Debtor $388 for its prepetition services, which, when paid, becomes property of Van Horn to be deposited into the firm's operating account—not its trust account.[2] The amount of Van Horn's prepetition flat fee ($388) is not happenstance: it equals the costs of the mandatory prepetition credit counseling and postpetition financial management courses ($50) and the chapter 7 filing fee ($338).

Under the Fee Agreement, the debtor elects to ask Van Horn—postpetition— to advance the $338 filing fee on his or her behalf. When the debtor exercises that option, Van Horn advances the filing fee and seeks reimbursement of it from the debtor postpetition. The Fee Agreement states:

> I understand that there are filing fees of $338.00 payable to the Bankruptcy Court. I have elected to request that VHLG pay these costs on my behalf after filing for which it will seek reimbursement from me.[3]

The U.S. Trustee filed a motion asking the Court to examine the reasonableness of Van Horn's fees.[4] In its motion, the U.S. Trustee raised a variety of issues relating to the Fee Agreement. To their credit, the U.S. Trustee and Van Horn

---

[1] Doc. No. 65, ¶ 2.

[2] *Id.* at ¶ 3.

[3] *Id.*

[4] Doc. No. 14.

have resolved all but one of those issues: how Van Horn treats the $388 prepetition payment.[5] The U.S. Trustee has now filed a motion for summary judgment asking the Court to invalidate the Fee Agreement as a matter of law—to the extent it treats the $388 as earned when paid and allows Van Horn to advance the filing fee on the Debtor's behalf—on two alternative grounds.[6]

On the one hand, if the $388 prepetition payment is really to cover costs—which the U.S. Trustee suggests is the case—the U.S. Trustee contends it must be held in Van Horn's trust account on the client's behalf.[7] And because Van Horn does not hold the $388 in trust, the U.S. Trustee contends the firm violates Rule Regulating the Florida Bar 5-1.1. Rule 5-1.1 requires attorneys to "hold in trust, separate from the lawyer's own property, funds and property of clients or third persons that are in a lawyer's possession in connection with a representation."[8]

On the other hand, the U.S. Trustee contends that if the $388 truly is for prepetition services, Van Horn is advancing the bankruptcy filing fee on the debtor's behalf. Relying on Chief Judge Isicoff's decision in *In re Brown*, the U.S. Trustee

---

[5] Doc. No. 54, p. 1.

[6] Doc. No. 54, pp. 2 – 3.

[7] Doc. No. 54, p. 3 (citing R. Regulating Fla. Bar 5-1.1(a)). If the $388 is for costs, then the U.S. Trustee contends the firm should be required to refund the $388 to the client if the client decides not to file for bankruptcy. Under the Van Horn Law Group's current prepetition agreement, however, clients who decide not to file for bankruptcy are not entitled to a refund of the $388. *Id.*

[8] *Id.* at p. 3; R. Regulating Fla. Bar 5-1.1(a).

argues that if Van Horn advances the filing fee, it runs afoul of Bankruptcy Code § 526 and Rule Regulating the Florida Bar 4-1.8.[9]

Although Van Horn acknowledges that Rule 4-1.8 bars a lawyer from providing financial assistance to a client, it contends that Rule 4-1.8 does not "bar all financial assistance given during the attorney-client relationship."[10] Citing to the commentary to Rule 4-1.8(e), Van Horn argues that the purpose of Rule 4-1.8 is to "prevent attorneys from acquiring a financial interest in litigation, thus creating a conflict of interest."[11] Van Horn says the Fee Agreement does not violate Rule 4-1.8 because it is not structured in a way that gives the firm a pecuniary interest in the bankruptcy case.[12]

Van Horn all but concedes the $388 prepetition fee is a prepayment of costs. But Van Horn does not want to treat the $388 as the prepayment of costs—and therefore have to hold it in trust—for two reasons. First, many people who come in for consultations decide not to file for bankruptcy. All those individuals, Van Horn says, received legal services. Thus, the firm earned the $388, and the clients are not entitled to have it returned to them. Second, if Van Horn were required to hold the

---

[9] *Id.* at pp. 2 – 3 (citing *In re Brown*, 631 B.R. 77, 103 (Bankr. S.D. Fla. 2021)).

[10] Doc. No. 65, ¶ 6.

[11] *Id.* at ¶ 7.

[12] *Id.* at ¶¶ 8 & 10.

$388 in trust, it would have to hire an accounting staff just to deal with the accounting issues.

## II.    ANALYSIS

### A.    *Clark & Washington*

Over ten years ago, in *Walton v. Clark & Washington, P.C.* ("*Clark & Washington I*"), this Court prohibited Clark & Washington, a consumer debtors' firm, from accepting postdated checks as a retainer for postpetition services.[13] There, Clark & Washington entered into fee agreements with clients under which the firm accepted a relatively small payment for its prepetition work (typically $250) and postdated checks from the debtor (typically four or five checks totaling $1,000) as a "retainer" for its postpetition work.[14]

This Court concluded that the postdated checks gave rise to prepetition claims; therefore, negotiating the checks violated either the automatic stay or the discharge injunction (depending on when the checks were cashed).[15] So the Court prohibited Clark & Washington from accepting postdated checks for deposit after the petition date as payment of its fees.[16]

---

[13] 454 B.R. 537, 546 (Bankr. M.D. Fla. 2011) ("*Clark & Washington I*").

[14] *Id.* at 539 – 40.

[15] *Id.* at 541 – 46.

[16] *Id.* at 546.

The following year, Clark & Washington asked this Court to approve a revised bifurcated fee agreement. Under the revised agreement, the debtor signed one agreement for prepetition services and, after the bankruptcy case was filed, a second agreement for postpetition services.[17] The fee for prepetition services was typically $250 (with the debtor paying the filing fee), while the fee for postpetition services was typically $1,000.[18] Subject to certain conditions not relevant here, the Court approved the bifurcated fee agreement ("*Clark & Washington II*.)[19]

### B.    *In re Brown*

Fast forward ten years to *In re Brown*. In *Brown,* Chief Judge Isicoff of the Southern District of Florida was asked to approve three bifurcated fee agreements that were similar to the one in *Clark & Washington*,[20] but with two main differences.

First, two of the three prepetition agreements at issue in *Brown* were "zero-dollar down agreements." In other words, the debtor was not required to pay *any* fees

---

[17] *Walton v. Clark & Washington, P.C.,* 469 B.R. 383, 38 – 86 (Bankr. M.D. Fla. 2012) ("*Clark & Washington II*").

[18] *Id.* at 385.

[19] *Id.* at 387 – 88. Those conditions included disclosing the "two-contract procedure" on separate cover pages for the prepetition and postpetition agreements; requiring clients to acknowledge that they received and read the "two-contract procedure" disclosures; requiring the client to sign the prepetition agreement before the bankruptcy case is filed and the postpetition agreement after the case is filed; requiring the firm to notify clients that postpetition, they have the option to proceed pro se, retain a new firm, or sign the postpetition agreement to retain Clark & Washington; and requiring the postpetition agreement to notify the client that he or she has the right to cancel the postpetition agreement at any time within fourteen days. *Id.* at 386 – 88.

[20] 631 B.R. 77, 91 (Bankr. S.D. Fla. 2021).

for prepetition services.[21] Second, two of the three postpetition agreements gave the debtor the option of asking the law firm to pay the filing fee on the debtor's behalf, in which case the law firm would seek reimbursement of the filing fee from the debtor.[22]

The U.S. Trustee objected to the bifurcated fee agreements in *Brown* on several grounds,[23] including that the postpetition fee agreement's provision permitting the law firm to advance the filing fees on the debtor's behalf violated Bankruptcy Code § 526 and Rule 4-18 (e) of the Rules Regulating the Florida Bar.[24] On that issue, Chief Judge Isicoff agreed with the U.S. Trustee, ruling that the provision permitting the law firm to advance the filing fee violated both Bankruptcy Code § 526 and Rule Regulating the Florida Bar 4-1.8.[25]

### C.    Federal Rule of Bankruptcy Procedure 1006

Federal Rule of Bankruptcy Procedure 1006(a) requires that, subject to two exceptions, the filing fee must accompany the bankruptcy petition:

> Every petition shall be accompanied by the filing fee
> except as provided in subdivisions (b) and (c) of this rule.[26]

---

[21] *Id.* at 86 – 90. For instance, under one agreement, the debtor paid zero dollars for prepetition services and $1,262 for postpetition services; under the second agreement, the client paid zero dollars for prepetition services and $1,362 for postpetition services. *Id.* at 88 – 90.

[22] *Id.* at 86 – 90.

[23] *Id.* at 91.

[24] *Id.*

[25] *Id.* at 101 – 03.

[26] Fed. R. Bankr. P. 1006(a).

Subsection (b) allows a voluntary petition to be accepted for filing if it is accompanied by a petition to pay the filing fee in installments, and subsection (c) allows a chapter 7 voluntary petition to be accepted if it is accompanied by a request to waive the filing fee.[27]

Here, the Debtor did not request that the filing fee be waived or that she be permitted to pay it in installments. To the contrary, the Fee Agreement contemplates that a debtor—regardless of his or her particular financial circumstances—will ask Van Horn to advance the filing fee on his or her behalf.

But this scheme runs afoul of the Bankruptcy Code. To understand why, consider the two points in time—prepetition or postpetition—when a debtor and a law firm could enter into an agreement for the law firm to advance filing fees on the debtor's behalf.

A prepetition agreement would present the same problems as the postdated checks in *Clark & Washington I*: the agreement would give rise to a prepetition claim, and any attempt to seek reimbursement of the filing fee would violate either the automatic stay or the discharge injunction. Thus, a prepetition agreement for a law firm to advance a debtor's filing fee and later seek reimbursement would not pass muster under *Clark & Washington I*—irrespective of Rule 4-1.8.

And here, Van Horn's Fee Agreement is careful to make clear that the parties have no prepetition agreement with respect to Van Horn's advancing costs and

---

[27] Fed. R. Bankr. P. 1006(b), (c).

specifically contemplates that any agreement to advance costs will be made postpetition, the second point in time in which the agreement could be made:

> I [the Debtor] have *elected to request* that VHLG pay these costs on my behalf after filing for which it will seek reimbursement from me.[28]

While a postpetition agreement to advance fees would not run afoul of *Clark & Washington I*, it is not possible for Van Horn and the Debtor to agree postpetition for Van Horn to advance and pay a filing fee that is due when the Debtor's bankruptcy petition is filed with the Court.

In fact, the only way this would work and pass muster under *Clark & Washington I* would be for Van Horn to file the bankruptcy petition without paying the filing fee.[29] In other words, if the Court excuses Van Horn from complying with Bankruptcy Rule 1006.

But this Court cannot approve a Fee Agreement that is predicated on Van Horn's disregarding—or being excused from complying with—Bankruptcy Rule 1006's command that a filing fee must accompany a voluntary bankruptcy petition.

---

[28] Doc. No. 65, p. 1.

[29] In this case, it appears that Van Horn paid the filing fee at the same time it filed the chapter 7 petition. The U.S. Trustee has suggested that the contemporaneous payment of the filing fee "somewhat addresses" the issue. Not so. If Van Horn paid the filing fee at the same time it filed the petition, with the expectation that it would be reimbursed by the Debtor, then the agreement for Van Horn to advance the filing fee must have been entered into prepetition, in which case the agreement runs afoul of *Clark & Washington I.*

### III.   CONCLUSION

Of course, there is no problem with Van Horn charging clients $388 for prepetition services; treating that money as earned once paid; and depositing the $388 into the firm's operating account. What Van Horn may not do, though, is file a bankruptcy petition on a client's behalf without paying the required filing fee in direct violation of Bankruptcy Rule 1006.[30]

And it is unclear how Van Horn could rewrite its Fee Agreement in a way that would allow the firm to enter into a *postpetition* agreement to advance the filing fee on its client's behalf while, at the same time, complying with Rule 1006's mandate that a bankruptcy petition be accompanied by the filing fee.

For these reasons, the Court will enter a separate order granting the U.S. Trustee's summary judgment motion and disapproving Van Horn's Fee Agreement.

---

Attorney J. Steven Wilkes is directed to serve a copy of this Memorandum Opinion on interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of the Memorandum Opinion.

---

[30] *In re Brown*, 631 B.R. 77, 103 (Bankr. S.D. Fla. 2021) ("A bifurcation agreement, like any other fee arrangement, should give the debtor the three choices allowed by federal law: pay the fee up front, complete the paperwork to pay the filing fee in installments, or, if applicable, seek waiver of the filing fee.").

**J. Steven Wilkes, Esq.**
**Trial Attorney**
**U.S. Department of Justice**
   *Office of the U.S. Trustee, Region 21*

**G. Steven Fender, Esq.**
**Fender, Bolling and Paiva, P.A.**
   *Attorney for Chad Van Horn and Van Horn Law Group, P.A.*